**GREEN & BRADSHAW, P.A.**
SCANNED DOCUMENT(S) COVER SHEET

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS McCLISH, individually,
And EDMUND HOLMBERG, individually,

    Plaintiffs,  CASE NO.: 8:04-CV-2723-T24TGW

vs.

RICHARD B. NUGENT, SHERIFF OF
HERNANDO COUNTY, in his official
capacity and DEPUTY SHAWN TERRY,
individually and DEPUTY "JOHN DOES",
individually or in their supervisory capacity,

    Defendants.
_____/

## AFFIDAVIT OF CHRISTOPHER CALDERON

STATE OF FLORIDA

COUNTY OF HERNANDO

  Before me, the undersigned authority, personally appeared CHRISTOPHER CALDERON,

who, having been duly sworn, deposes and says:

1. I am a Defendant in the above-styled action and the events described herein are true, accurate and based upon my own observations and knowledge.

2. I am over the age of eighteen (18) years.

3. I currently serve as a Deputy Sheriff for the Hernando County Sheriff's Office (hereinafter "HCSO").

4. I am a fully certified sworn law enforcement officer meeting all Florida requirements for serving as a deputy sheriff.

5. Prior to October 13, 2001, I did not know Douglas McClish or Edmund Holmberg.

6. On the evening of October 13, 2001, I was requested to accompany Officer Shawn Terry as backup on an aggravated stalking case. Deputy Terry advised that he had probable cause for the arrest of Douglas McClish for aggravated stalking. I was told that backup was needed since earlier that day, the suspect and his roommate, Edmond Holmberg, had become hostile and were screaming profanities in the direction of the officer.

7. Deputy Terry and I went down a dirt road to the property of Mr. McClish and Mr. Holmberg. I observed that there was a screened porch but no doorbell or place to knock or to announce ourselves without entering on to the screened porch which led to the front door. Deputy Terry knocked on the door and identified himself as "Sheriff's Office". Through a window, I observed both McClish and Holmberg rush toward the front door. The front door swung open and McClish came rushing out yelling incomprehensible words. Deputy Terry then advised that he was making a probable cause arrest as a result of aggravated stalking and instructed McClish to turn around and place his hands behind his back. While this was occurring, Holmberg stood at the doorway and continued to scream at us, demanding to know why we were there even though

we had previously advised him. Mr. McClish was then taken into custody while continuing to verbally resist officer Terry. He was escorted off the porch.

8. While the above was occurring, Mr. Holberg ran in and out of the house several times screaming at the top of his lungs. He then ran out of the house and approached me as I had Mr. McClish in custody in the front yard. Holmberg was still screaming profanities while approaching and held his fists clenched at his sides. When he got approximately five feet from me, he raised his clenched fists upward in an aggressive manner and demanded once again to know what was going on. His actions and behavior caused both Deputy Terry and me to have to divert our attention from McClish to Holmberg. We directed Holmberg to walk away and return to his home. After disobeying several commands to walk away and return to his home, Holmberg was taken into custody for resisting an officer without violence. It was my opinion that his aggressive actions and refusal to leave the location where we were holding McClish, threatened the safety of McClish and the arresting officers.

9. Holmberg was handcuffed and placed in my vehicle after I checked to determine that the cuffs were neither too tight nor too loose. While enroute to the jail, Holmberg made several threats that he would get even with the Sheriff's Office and not ever be taken without a fight if we ever dealt with him again.

10. Both McClish and Holmberg were taken to the Hernando County Jail which is under the control and operation of a private corporation and is not operated by either Hernando County nor the Sheriff.

11. During the period of time after McClish was arrested which included both the time that we were dealing with Holmberg and the walk up the dirt road to Holden drive, I never heard McClish complaint that his handcuffs were too tight nor did I observe anything that led me to believe that they were tight.

FURTHER, AFFIANT SAYITH NOT.

_____
Christopher Calderon

SWORN TO AND SUBSCRIBED before me

on this __3__ day of __Nov__, 2005.

(Personally Known)

_____
NOTARY PUBLIC

Printed Name: Constance I Bair

My Commission Expires:

Constance I. Bair
MY COMMISSION # DD237979 EXPIRES
September 1, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

**GREEN & BRADSHAW, P.A.**
SCANNED DOCUMENT(S) COVER SHEET

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS McCLISH, individually,
And EDMUND HOLMBERG, individually,

     Plaintiffs,   CASE NO.: 8:04-CV-2723-T24TGW

vs.

RICHARD B. NUGENT, SHERIFF OF
HERNANDO COUNTY, in his official
capacity and DEPUTY SHAWN TERRY,
individually and DEPUTY "JOHN DOES",
individually or in their supervisory capacity,

     Defendants.
_____/

## AFFIDAVIT OF SHAWN TERRY

STATE OF FLORIDA

COUNTY OF HERNANDO

  Before me, the undersigned authority, personally appeared SHAWN TERRY, who, having been duly sworn, deposes and says:

  1. I am a Defendant in the above-styled action and the events described herein are true, accurate and based upon my own observations and knowledge.

  2. I am over the age of eighteen (18) years.

3. I currently serve as a Deputy Sheriff for the Hernando County Sheriff's Office (hereinafter "HCSO") and previously was employed with Pasco County Sheriff's Office.

4. I have been employed by HCSO since the year 2000.

5. I am a fully certified sworn law enforcement officer meeting all Florida requirements for serving as a deputy sheriff.

6. Prior to October 13, 2001, I did not know Douglas McClish or Edmund Holmberg

7. On October 13, 2001, I received a dispatch to go to the home of Mr. and Mrs. Bryon Pazdur at 25000 Holden Drive, Brooksville, Florida. The complaint involved problems the Pazdurs were having with Edmund Holmberg, the neighbor on the southern boundary of their property. I did not know Mr. and Mrs. Pazdur prior to my time of arrival at approximately 4:00 p.m.

8. After introducing myself to Mrs. Pazdur, I was provided with a history of the problems she and her family had with Mr. McClish and Mr. Holmberg over the past years. I was also advised that earlier on the day of my visit, Mr. Holmberg had been yelling profanities at the Pazdurs as Mr. Pazdur was attempting to clear his land.

9. In an attempt to diffuse the situation that existed and secure Mr. Holmberg's version of the events, I crossed a downed fence between the property line separating the McClish and Pazdur property. I met with Mr. Holmberg and advised him that the neighbors were complaining that he was shouting profanities and I had been told that Holmberg and McClish had accused the Pazdurs of "stealing a piece of land from them." I advised Mr. Holmberg that if the Pazdurs had lawfully purchased the land, it was their land and there was no reason to have the disputes which were occurring.

10. As I talked to Mr. Holmberg, Mr. McClish arrived and exited from his automobile. Holmberg began relating to McClish my purpose in being there and that I was basically accusing

them of shouting profanity at the Pazdurs. McClish became irate, began using profanity toward me and requested that I leave his property. I returned by the same route I had arrived and met again with Diane Pazdur shortly before 5:00 p.m.

11. I asked Mrs. Pazdur and her children to describe to me what was occurring. I was then provided a long narrative of the events over the last few years which included multiple instances where McClish and Holmberg threatened the Pazdur family, used audio equipment for the purpose of blasting noise towards their residence, shot firearms and otherwise performed overtly intimidating acts directed to the Pazdurs and cursed them from the property line.

12. While talking to Mrs. Pazdur, I inquired as to whether the Sheriff's Office had been called in the past and was told that they had been called on many occasions but that, "No one has helped us." I requested various members of the Pazdur family provide me with written statements. A copy of such written statements detailing the history of problems with McClish and Holmberg are attached to this Affidavit.

13. While I was with Mrs. Pazdur, I observed McClish drive by the Pazdur home screaming "I'm going to kill you, bitch. You'll see, bitch." The statements were yelled toward the direction where Mrs. Pazdur and her children were standing. At one point, I observed McClish in his vehicle watching the Pazdurs from the wood line adjacent to the Pazdur property.

14. After receiving written statements from the Pazdurs, I returned to the Hernando County Sheriff's Office and requested the dispatch supervisor provide me any CAD reports pertaining to the Pazdur family or the address at 25000 Holden Drive address. I then attempted to match the events described by the Pazdur family with the complaints contained in the CAD reports. It was my opinion that probable cause existed to arrest McClish for aggravated stalking based upon my observations of McClish earlier that day as well as the written and verbal statements of the

Pazdur family. I discussed this issue with my supervisor who concurred we had probable cause. I then returned to the Pazdur home at approximately 11:30 p.m., with Deputy Calderon and other officers in order to effectuate the arrest of McClish. Due to the other duties required of me as well as my investigation involving McClish, this was the earliest I could return to Holden Drive to arrest McClish.

15. After meeting briefly with the Pazdurs and advising them that I intended to place McClish under arrest, I came in contact with a neighbor, Lanny Baum. I did not know Mr. Baum but he indicated that he had a "clicker" that would open a gate which provided entrance to a roadway which was adjacent to the Pazdur property and led to McClish's property. Mr. Baum opened the gate allowing us access to the road.

16. After traveling down the road to the McClish property, I observed a screened porch with a screen door partially open leading to the front door of the mobile home. There was no doorbell or other way of knocking on the screened door and it appeared that the entry into the mobile home was through the wooden front door. I knocked on the door and stepped back. McClish opened the door and asked, "Who is it?" and I said, "Sheriff's Office." He came on to the screened porch where I placed him under arrest for aggravated stalking. In accordance with Department policy, I handcuffed McClish using only that degree of force necessary to attach the handcuff. I then checked to make certain that the handcuffs were secure but were not excessively tight.

17. Mr. McClish was either wearing a bath robe or evening robe. He asked for the opportunity to get dressed. I initially advised him that he could but then Holmberg rushed out screaming, yelling and waiving his hands creating concern for the safety of the officers. Deputy Calderon arrested him for resisting an officer without violence. I advised McClish that under the circumstances, I would not allow him to change since the county jail would be providing him with

new clothing. McClish was transported to the Hernando County Jail where he was incarcerated on the charge of aggravated stalking.

18. The Hernando County Jail is under the operation and control of Corrections Corporation of America and not the Sheriff of Hernando County, Florida. The corrections officers are employees of Corrections Corporation of American and not the Sheriff of Hernando County.

19. As a part of my responsibilities incident to the arrest of Mr. McClish, I prepared an Incident Report in which I detailed the history of the relationship between McClish/Holmberg and the Pazdur family. I prepared the report based on a comparison of calls as reflected by the logs of the Hernando County Sheriff's Office and the verbal and written information provided by the Pazdur family. At a later point and time, I was requested to prepare a supplement to the original Incident Report when the State Attorney's Office advised that some of the dates appeared to be wrong. I researched the inconsistencies and later prepared a supplemental incident report in an effort to correct the inconsistencies in the initial report. The initial report was not destroyed nor was there any effort made to modify its language other than through a supplemental report.

20. My actions on October 13, 2001, were based upon a good faith belief that probable cause existed for the arrest of McClish for aggravated stalking. At the tine that I arrested McClish, I was aware that I could not enter the mobile home to effectuate the probable cause arrest but considered the screened porch leading to the front door to be an area that could be entered since it was readily apparent that there was no place to knock nor a door bell on the screen door and that the wooden door leading directly into the mobile home was the "front door" which was designed to be used to announce the arrival of visitors. It was my opinion that neither the laws of the State of Florida nor the United States restricted my ability to knock on the front door and then effectuate an arrest as occurred when McClish walked on to the front porch.

21. No excessive force was used in taking Mr. McClish into custody and I personally checked the handcuffs to make certain they were not excessively tight.

22. Any inconsistencies in the incident report had nothing to do with the basis for my arrest nor any continued prosecution of McClish. Any modifications were as a result of the request from the assistant State Attorney asking only that I clarify the initial report. The arrest and prosecution of McClish was based upon probable cause derived from my observations of McClish's actions and verbal threats while at the Pazdur home together with the written and verbal statements of the Pazdurs.

*[signature]*

Shawn Terry

SWORN TO AND SUBSCRIBED before me

on this 2nd day of Nov, 2005.

*[signature]*

NOTARY PUBLIC

Nichole C. Edwards
Commission # DD445660
Expires September 30, 2009
Bonded Troy Fain - Insurance, Inc 800-385-7019

Printed Name: _____

My Commission Expires:

**GREEN & BRADSHAW, P.A.**
SCANNED DOCUMENT(S) COVER SHEET

# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS McCLISH, Individually,
and EDMUND HOLMBERG, Individually,

    Plaintiffs,

v.                  CASE NO: 8-04-CV-2723-T-24TGW

RICHARD B. NUGENT, SHERIFF OF HERNANDO
COUNTY, in his official capacity, and
DEPUTY SHAWN TERRY, individually, and
DEPUTY "JOHN DOES", individually
or in their supervisory capacity,

    Defendants.
_____/

| | |
|---|---|
| PROCEEDINGS: | Videotaped Deposition of EDMUND HOLMBERG |
| DATE: | August 5, 2005 |
| PLACE: | 309 South Main Street Brooksville, Florida |
| TIME: | 1:47 PM to 3:18 PM |
| REPORTED BY: | C. GAIL DONATO, RPR Notary Public - State of Florida at Large |
| VIDEOGRAPHER: | JOHN LuBRANT, CLVS |
| APPEARANCES: | JOHN D. MALLAH, ESQUIRE Post Office Box 699 Englewood, Florida 34295 Appearing for Plaintiffs |

```
1      A    During the course of the evening?
2      Q    Yes, sir.
3      A    Twice.
4      Q    Do you know why he sprayed you a second
5   time?
6      A    I have no idea.
7      Q    Okay.
8      A    But between that and the taunting and
9   baiting with the camcorder.
10     Q    When did you -- were you released?
11     A    The next morning.
12     Q    What time?
13     A    Or -- I'm not sure.
14     Q    Did you sustain any injury, physical
15  injury, as a result of the arrest or events at the
16  Hernando County Jail?
17     A    Physical?
18     Q    Yes, sir.
19     A    Well, my eyes are still hurting, for one.
20  I'm taking now, you know, eye drops all the time.
21     Q    Anything else?
22     A    Physically?  They didn't beat me, no.
23     Q    Okay.  So the only physical injury that
24  you sustained is that you're taking eye drops?
25     A    From the mace, yes.
```

**GREEN & BRADSHAW, P.A.**
SCANNED DOCUMENT(S) COVER SHEET

# EXHIBIT D

# IN THE COUNTY COURT, IN AND FOR HERNANDO COUNTY, FLORIDA

**STATE OF FLORIDA -vs-** HOLMBERG, EDMOND

25058 HOLDEN DRIVE
BROOKSVILLE  FL  34601-

**DEFENDANT**

**ORDER**

**DATE OF HEARING:** 01/07/02
**CASE NO:** 01002476MMMA
**CITATION #:**
**CHARGE:** 001 OBSTRUCT OR OPPOSING A LEO WITHOUT

## SPEC ARRAIGNMENT

**DEFENDANT**
- [x] VIDEO 2:03
- [ ] PRESENT
- [x] NOT PRESENT  ☐ FTA  ☐ WAIVED
- [x] REPRESENTED BY MANDER, III A R
- ☐ SPEEDY WAIVED  ☐ WAIVED READING
- ☐ CONTINUED AT REQUEST OF DEFENDANT - STATE - COURT
- ☐ PD APPOINTED  ☐ NOT QUALIFIED FOR PD
- ☐ WAIVED COUNSEL  ☐ WILL HIRE PRIVATE COUNSEL

**BOND:**
- ☐ ISSUE CAPIAS/BENCH WARRANT  ☐ CASH ONLY
- ☐ BOND SET AT/REDUCED TO $ _____  [x] RELEASED
- ☐ BOND ESTREATED-FTA  ☐ ESTREATURE SET ASIDE
- ☐ CASH BOND _____ IN AMOUNT OF $ _____
- ☐ SURETY BOND AA01211253  IN AMOUNT OF $ 500.00
- ☐ BONDSMAN GENE HOOD BAIL BONDS INC
- ☐ RECALL CAPIAS  ☐ SET ASIDE CAPIAS  ☐ CALL SO _____
- ☐ CONVERT CASH BOND TO FINE - REFUND BALANCE

**PLEA:**
- ☐ GUILTY/ADMIT  ☐ NOT GUILTY/DENY
- ☐ NOLO CONTENDERE
- ☐ AMENDED CHARGE OF _____
- ☐ CHANGE OF PLEA  ☐ WRITTEN PLEA

**VERDICT:**
- ☐ GUILTY  ☐ WITHHELD
- ☐ NOT GUILTY  [x] DISMISSED
- ☐ AMENDED CHARGE
- ☐ MERGE/DISMISS WITH CASE _____
- ☐ NO INFORMATION  ☐ NOLLE PROSEQUI

**SENTENCE:**
- ☐ PLACED ON PROBATION _____ MONTHS
- ☐ COURT SUPERVISED
- ☐ JOIN  [x] COMPLETED PTI: CDP ___ AM ___ BIP ___ AA ___
- ☐ EVALUATE-TREATMENT IF INDICATED
- ☐ NO ALCOHOL/DRUGS  ☐ OBTAIN VALID DL
- ☐ ATTEND  ☐ DUI SCHOOL  ☐ ADV DUI  ☐ DDS  ☐ ADDS
- ☐ DL RVKD _____  ☐ MIN ☐ MAX ☐ NUNC PRO TUNC _____
- ☐ WORK PERMIT WHEN QUALIFIED  ☐ WAIVE COS FEES
- ☐ _____ HOURS COMMUNITY WORK
- ☐ COMMUNITY WORK HOURS IN LIEU OF FINE
- ☐ CAN BUY COMMUNITY WORK HOURS AT $ _____ /HR.
- ☐ MOTION: _____
- ☐ HERNANDO JAIL _____ DAY(S)  ☐ SUSPEND _____ DAY(S)
- ☐ CREDIT TIME SERVED _____ DAY(S)
- ☐ CONCURRENT  ☐ HOUSE ARREST
- ☐ WEEKEND JAIL BEGINNING _____
- ☐ RELEASE TODAY THIS CHARGE  ☐ AFTER PROBATION INTERVIEW
- ☐ NO CONTACT W/ VICTIM  ☐ CHANGE TO "NO VIOLENT CONTACT"
- ☐ ROR UNTIL _____  ☐ TO PAY FINE/COSTS ☐ OR D6 LICENSE
- ☐ TERMINATE PROBATION IN _____ MONTHS IF REQUIREMENTS MET
- ☐ RETAIN JURISDICTION _____  ☐ RESTITUTION
- ☐ OTHER _____

MAKE REMITTANCE PAYABLE TO: CLERK OF COUNTY COURT, 20 N MAIN ST, BROOKSVILLE, FL 34601

**RETURN:** _____ @ _____ AM/PM
- ☐ ARR  ☐ SP ARR  ☐ TRIAL MOTION
- ☐ PTC  ☐ STATUS  ☐ TRIAL
- ☐ VOP  ☐ SENTENCING  ☐ INFRACTION
- ☐ PROOF OF COMPLIANCE TO CLERK'S OFFICE OR APPEAR
- ☐ OTHER _____  ☐ CLERK TO NOTIFY
- [x] CLOSE CASE

**MONETARY OBLIGATIONS:**
- ☐ FINE/COURT COST
- ☐ COURTHOUSE IMPROVEMENT
- ☐ D6/LATE FEE
- ☐ PDAF
- ☐ BCDF .. (To State Attorney)
- ☐ OTHER

☐ YOU MUST APPEAR IN THE COUNTY COURT, IN HERNANDO COUNTY, BROOKSVILLE, FLORIDA, ON THE COURT DATE LISTED ABOVE. FAILURE TO COMPLY MAY RESULT IN A CAPIAS/WARRANT FOR YOUR ARREST.

_____
**DEFENDANT/ATTORNEY FOR DEFENDANT**

**KAREN NICOLAI, CLERK OF CIRCUIT COURT**
BY: _Anita Shide_ , D.C.

DONE AND ORDERED IN OPEN COURT/CHAMBERS
THIS 07 DAY OF January , 2002.

_____
**JUDGE OF COUNTY COURT**  SUBD

FORM 206  DEF/ATTY ___ JAIL ___ SO ___ FAX ___ PD ___ PROB ___ SAO ✓ DV ___ PURCH ___ COE ___ BOND ✓ EXAM ___ BONDSMAN ___